UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE


Kevin Spencer, Mark Lagasse and
Lagaspence Realty, LLC

    v.                        Civ. No. 16-cv-353-JL
                                     Opinion No. 2017 DNH 212
Eversource Energy Service Co.


**MEMORANDUM ORDER**

The question presented in this case is whether the owner
and lessee of an easement are required and indispensable parties
to a lawsuit challenging the use of that easement.  This case
involves property owners' efforts to prevent construction of
electric transmission lines over an easement burdening
plaintiffs' property in Stark, New Hampshire, part of a 190-mile
project known locally as the Northern Pass.  The crux of
plaintiffs' complaint is that the proposed use of the easement
is unreasonable and a breach of its express terms.  Invoking
this court's diversity jurisdiction, 28 U.S.C. § 1332, they seek
a declaratory judgment preventing the project, see 28 U.S.C. §
2201, and monetary damages.

Before the court are plaintiff's motion to amend their complaint[1] and defendant's motion to dismiss.[2]  The plaintiffs' proposed Amended Complaint updates developments within the state utility regulatory process and information regarding their potential damages.[3]  The defendant's motion to dismiss posits two arguments:  1) that the court lacks subject-matter jurisdiction, Fed. R. Civ. P. 12(b)(1), because the complaint fails to satisfy the $75,000 amount-in-controversy threshold set forth in 28 U.S.C. § 1332(a); and 2) that the plaintiffs have failed to join two necessary and indispensable parties -- the owner and lessee of the easement, Fed. R. Civ. P. 12(b)(7) and 19.

After reviewing the parties' submissions and hearing oral argument, the court first grants plaintiff's motion to amend. The court further finds that although the Amended Complaint alleges sufficient facts (just barely) to satisfy the jurisdictional amount, it must be dismissed because the owner and lessee of the easement are both necessary and indispensable parties, their joinder would defeat the court's diversity jurisdiction, and the case cannot "in equity and good

_____

[1] Doc. no. 21.

[2] Doc. no. 9.

[3] Counsel for both parties agreed at the motion hearing that the proposed Amended Complaint effected no substantive change in the plaintiffs' claims.

conscience" proceed without them.  28 U.S.C. § 1332(c); Fed. R.
Civ. P. 19(b).  The court therefore grants defendant's motion to
dismiss.

I.  **Background**

The individual plaintiffs, Kevin Spencer and Mark Lagasse,
are each owners of plaintiff Lagaspence Realty, LLC, which, in
turn, owns the Percy Lodge and Campground in Stark, NH.[4]  Spencer
and Lagasse are rebuilding an old boarding house to create a
year-round lodge and convenience store.[5]  They have spent over
$600,000 on the project.[6]  The property was, at all relevant
times, encumbered by a power line easement granted to Public
Service Company of New Hampshire (PSNH) by plaintiffs'
predecessor in title in 1946.  The easement measures
approximately 2950 feet by 150 feet and is presently occupied by
an electric transmission line.[7]  The Northern Pass lines will run
above and parallel to the existing lines and will be supported
by steel lattice structures anchored to concrete foundations.
Unlike the present power lines on the easement, the proposed

---

[4] Amended Complaint, doc. no. 21-1, ¶¶ 1-3.

[5] Id. ¶ 46.

[6] Id. ¶ 47.

[7] Id. ¶¶ 48, 55.

transmission lines will be visible from the plaintiffs' planned lodge.[8]  Five of these structures are to be built on the easement at issue.[9]

The easement burdening plaintiffs' land is still owned by PSNH, a New Hampshire corporation and regulated public utility.[10] In October 2015, PSNH leased the easement to Northern Pass Transmission, LLC (NPT), a New Hampshire entity established in 2010 to construct and own the proposed transmission lines.[11]  NPT is a wholly-owned subsidiary of Eversource Energy Transmission Ventures, Inc., which is, in turn, a wholly-owned subsidiary of Eversource Energy, a Massachusetts holding company.[12]  PSNH is

---

[8] Id. ¶ 75.

[9] Id.

[10] Id. ¶ 7; N.H. Rev. Stat. Ann. § 362:2.

[11] Id. ¶¶ 6, 18.  Although PSNH and NPT have executed the lease, counsel indicated at the motion hearing that the lease does not take effect until approved by the New Hampshire Public Utilities Commission.

[12] Bersak Affidavit, doc. no. 9-2 ¶ 3. The court, as it is permitted to do, considers extrinsic evidence submitted by EESC, specifically, the Bersak affidavit, attached as Exhibit 2 to defendant's motion.  Doc. no. 9-2.  See Scott v. First American Title Ins. Co., 2007 DNH 062 (noting that consideration of extrinsic evidence is permitted in Rule 19 context); Torres-Gonzalez v. HIMA San Pablo Caguas, 650 F. Supp. 2d 131, 134 (D.P.R. 2009) ("[T]he principle of conversion of a motion to dismiss into a motion for summary judgment when extrinsic materials are reviewed, does not apply in regards to a motion to dismiss for lack of subject matter jurisdiction.") (citing

also a wholly owned Eversource Energy subsidiary.[13]  Defendant
Eversource Energy Service Co. a Connecticut corporation, is also
a wholly-owned subsidiary of Eversource Energy.  It is a service
company performing non-power related tasks, including the
provision of administrative, accounting, engineering, financial
and legal services, to other wholly-owned Eversource Energy
subsidiaries,[14] such as PSNH.[15]

## II.  Legal analysis

The court, as is usually required, turns first to the
jurisdictional question raised by defendant's motion.  See
Dynamic Image Tech., Inc. v. United States, 221 F.3d 34, 38 (1st
Cir. 2000) ("As a general matter, trial courts should give Rule
12(b)(1) motions precedence.").  After resolving that question
-- in plaintiff's favor -- the court will address the joinder
issue.

---

Dynamic Image Techs., Inc. v. United States, 221 F.3d 34, 37
(1st Cir. 2000).

[13] Id. ¶ 21.

[14] Id. ¶ 6.

[15] Id. ¶ 17.

A.  Amount-in-controversy

Pursuant to 28 U.S.C. § 1332, federal "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs," and there is diversity of citizenship.  28 U.S.C. § 1332(a).  The amount in controversy in an action such as this seeking declaratory relief "is the value of the right or the viability of the legal claim to be declared . . . ."  CE Design Ltd. v. Am. Econ. Ins. Co., 755 F.3d 39, 43 (1st Cir. 2014).  Where, as here, there are multiple plaintiffs, each must allege a claim that is in excess of $75,000.  Stewart v. Tupperware Corp., 356 F.3d 335, 337 (1st Cir. 2004).  The plaintiff carries the burden to establish the jurisdictional minimum amount.  Id. at 338.

"[T]he sum claimed by the plaintiff controls if the claim is apparently made in good faith.  It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal."  Id. (quoting St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288-89 (1938)).  A plaintiff's "'general allegation of damages that meet the amount requirement suffices unless questioned by the opposing party or the court.'"  Id. (quoting Spielman v. Genzyme Corp., 251 F.3d 1, 5 (1st Cir. 2001)).  However, once the

opposing party has questioned the amount, "'the party seeking to invoke jurisdiction has the burden of alleging with sufficient particularity facts indicating that it is not a legal certainty that the claim involves less than the jurisdictional amount.'" Id. (quoting Spielman, 251 F.3d at 5).  This burden may be met by amending pleadings or submitting affidavits.  Dep't of Recreation & Sports of P.R. v. World Boxing Ass'n, 942 F.2d 84, 88 (1st Cir. 1991).

Here, as previously noted, plaintiffs allege that they have spent over $600,000 renovating their property.[16]  This assertion is supported by an affidavit detailing the expenditures,[17] the accuracy of which the defendants do not dispute.  The plaintiffs further claim that the proposed transmission lines will cause aesthetic damage to the property which will both harm their prospective business and diminish the property's value.[18]  They seek damages "for their personal investment in money, equipment use and labor."[19]

While these allegations are sparse, the court, reading the complaint liberally, Murphy v. United States, 45 F.3d 520, 522

---

[16] Amended Complaint, doc. no. 21-1, at ¶ 47.

[17] Affidavit, doc. no. 11-1.

[18] Amended Complaint, doc. no. 21-1, at ¶ 78.

[19] Id. ¶ 82.

(1st Cir. 1995), is satisfied that they are sufficient to indicate "that it is not a legal certainty that the claim involves less than the jurisdictional amount" of $75,000 to each of the plaintiffs. Stewart, 356 F.3d at 338. The Complaint could be fairly read as alleging that the bulk of plaintiffs' $600,000 investment will be lost as a result of the aesthetic damage to their property caused by the alleged misuse of the easement. Whatever difficulty the plaintiffs might ultimately have in proving their damages "is largely irrelevant to the court's jurisdiction because the pertinent question is what is in controversy in the case, not how much the plaintiffs are ultimately likely to recover." Amoche v. Guarantee Trust Life Ins. Co., 556 F.3d 41, 51 (1st Cir. 2009) (emphasis omitted). The court therefore denies defendant's motion as to Rule 12(b)(1).

B.   Failure to join

    As noted, plaintiffs have sued only EESC, but not PSNH, the owner/lessor of the easement, or NPT, the lessee and project proponent. Defendant argues that both PSNH and NPT are required and indispensable parties, and because neither can be joined without destroying diversity, the Complaint must be dismissed. The court agrees.

*1.  Applicable legal standard*

Whether dismissal under Rule 19 is warranted is a two-part inquiry.  First, the court must determine whether the party is a required party under Rule 19(a), and then whether it is an indispensable party under Rule 19(b).  United States v. San Juan Bay Marina, 239 F.3d 400, 405 (1st Cir. 2001).  If the party is "required" but, as here, joinder is not feasible because it would destroy diversity, Rule 19(b) then requires the court to determine, "whether in equity and good conscience, the action should proceed among the existing parties or should be dismissed."  Fed. R. Civ. P. 19(b).

Failure to join a party under Rule 19 is a grounds for dismissal under Rule 12(b)(7).  The Rule applies to "circumstances in which a lawsuit is proceeding without particular parties whose interests are central to the suit." Picciotto v. Cont'l Cas. Co., 512 F.3d 9, 15 (1st Cir. 2008). It provides for the joinder of such "required"[20] parties when feasible.  Fed. R. Civ. P. 19(a)(2).  The joinder of non-diverse parties, for example, is not "feasible" under Rule 19 because joinder would undermine the court's diversity jurisdiction.  In

---

[20] The rule formerly referred to a required party as a "necessary party."  See Pujol v. Shearson/Am. Express, Inc., 877 F.2d 132, 134 (1st Cir. 1989).  To be consistent with the term now used in the rule, the court uses the phrase "required party" in its analysis, instead of the long-familiar "necessary party."

re Olympic Mills Corp., 477 F.3d 1, 8 (1st Cir. 2007).  The rule ultimately provides for the dismissal of suits when the court determines that the joinder of the "required" parties is not feasible, but that they are, nonetheless, so "indispensable" that the suit must not be litigated without them.  Fed. R. Civ. P. 19(b).

Rule 19 "furthers several related policies, including the public interest in preventing multiple and repetitive litigation, the interest of the present parties in obtaining complete and effective relief in a single action, and the interest of absentees in avoiding the possible prejudicial effect of deciding the case without them." Acton Co. of Massachusetts v. Bachman Foods, Inc., 668 F.2d 76, 78 (1st Cir. 1982).  "Generally, 'all interested parties should be joined in a declaratory judgment action whenever possible,' in keeping with the purpose of the Declaratory Judgment Act to fully and finally adjudicate the controversy at issue." RFF Family P'ship, LP v. Link Dev., LLC, 849 F. Supp. 2d 131, 137 (D. Mass. 2012) (Gorton, J.) (quoting State Farm Mut. Auto. Ins. v. Mid-Continent Cas. Co., 518 F.2d 292, 296 (10th Cir. 1975)).  "Where jurisdiction depends solely on diversity of citizenship, the absence of a non-diverse, indispensable party is not a mere procedural defect.  Rather, it destroys the district court's

original subject matter jurisdiction." Picciotto, 512 F.3d at
20.

2.   *Rule 19(a)*

Under Rule 19(a), a party is "required" if:

(A) in that person's absence, the court cannot accord
complete relief among existing parties; or

(B) that person claims an interest relating to the
subject of the action and is so situated that
disposing of the action in the person's absence may:

(i) as a practical matter impair or impede the
person's ability to protect the interest; or

(ii) leave an existing party subject to a
substantial risk of incurring double, multiple,
or otherwise inconsistent obligations because of
the interest.

Fed. R. Civ. P. 19(a)(1).

At oral argument, plaintiffs' counsel conceded that PSNH
and NPT are "required parties" under Rule 19(a).  The court
appreciates counsel's candor, as it is beyond reasonable dispute
that both PSNH and NPT are required parties.  PSNH owns the
easement burdening plaintiffs' property and NPT is both the
lessee and the party seeking regulatory approval to construct
the Northern Pass.  Under the first criterion of Rule 19(a), a
party is "required" if complete relief cannot be accorded among
the existing parties.  Fed. R. Civ. P. 19(a)(1)(A).  Here, even
if the court issues the declaration plaintiffs seek as to EESC,
it will not be binding on PSNH and NPT.  See Mass. Delivery

Ass'n v. Coakley, 671 F.3d 33, 48 n.12 ("The [Federal Declaratory Judgment] Act does not contain any provisions indicating that declaratory judgments are authoritative vis-à-vis nonparties to the litigation."). Therefore, a decision in this case will not accord complete relief among the parties, including the plaintiffs, in the absence of NPT and PSNH.

Similarly, under Rule 19(a)(1)(B),[21] a declaratory judgment from this court could "impair or impede" the interests of NPT and PSNH, Fed R. Civ. P. 19(a)(1)(B)(i), because each has "an obvious interest that requires protection." Sch. Dist. Of City of Pontiac v. Sec'y of U.S. Dep't. of Educ., 584 F.3d 253, 266 (6th Cir. 2009); cf. Schutten v. Shell Oil Co., 421 F.2d 869, 874 (5th Cir. 1970) (observing that even absent binding ruling, a potential creation of a mere cloud on title is sufficient prejudice to make a party's joinder desirable).

In addition, a declaratory judgment from this court risks both plaintiffs' and defendant's exposure to inconsistent obligations should PSNH and NPT successfully litigate the scope of the easement in another forum. Fed. R. Civ. P. 19(a)(1)(B)(ii). Nor could plaintiffs enforce a declaratory

---

[21] Given the disjunctive "or" after Rule 19(a)(1)(A), consideration of the subsection (B) criteria would have been unnecessary, even without plaintiffs' concession. The court sketches the analysis here for the sake of completeness.

judgment from this court without potentially running afoul of an
adverse judgment from a subsequent forum.  Cf. Delgado v. Plaza
Las Americas, Inc., 139 F.3d 1, 3 (1st Cir. 1998) ("Inconsistent
obligations occur when a party is unable to comply with one
court's order without breaching another court's order concerning
the same incident.").

3.    *Rule 19(b)*

        Having found that PSNH and NPT are both required parties
and that their joinder would destroy diversity jurisdiction,
i.e., it is "not feasible," the court turns to Rule 19(b) to
determine whether the action should nevertheless proceed in
their absence.  In making this decision, the court must
consider:

>         [F]irst, to what extent a judgment rendered in the
>         person's absence might be prejudicial to the person or
>         those already parties; second, the extent to which, by
>         protective provisions in the judgment, by the shaping
>         of relief, or other measures, the prejudice can be
>         lessened or avoided; third, whether a judgment
>         rendered in the person's absence will be adequate;
>         fourth, whether the plaintiff will have an adequate
>         remedy if the action is dismissed for nonjoinder.

Piccioto, 512 F.3d at 18 n.13.  Fed. R. Civ. P. 19(b)(1)-(4).
However, our Court of Appeals has stressed that "Rule 19(b)
determinations must be based on fact-specific considerations,"
and "must be steeped in 'pragmatic considerations.'"  Travelers
Indem. Co. v. Dingwell, 884 F.2d 629, 635 (1st Cir. 1989)

(quoting Advisory Committee Notes on the 1966 Amendments to Rule 19). Adopting this approach, the court declines to permit the case to proceed in this forum without the absent defendants.

As to the first factor -- prejudice to either the existing or non-joined parties -- the court has already noted that neither NPT nor PSNH would be bound by any judgment in this case. But, as the Supreme Court has observed:

> This means, however, only that a judgment is not res judicata as to, or legally enforceable against, a nonparty. It obviously does not mean either (a) that a court may never issue a judgment that, in practice, affects a nonparty or (b) that (to the contrary) a court may always proceed without considering the potential effect on nonparties simply because they are not 'bound' in the technical sense. Instead, as Rule 19(a) expresses it, the court must consider the extent to which the judgment may 'as a practical matter impair or impede his ability to protect' his interest in the subject matter.

Provident Tradesmens Bank & Tr. Co. v. Patterson, 390 U.S. 102, 110 (1968) (internal footnotes omitted). Here, a judgment for the plaintiffs, even if not binding on the PSNH and NPT, may, "as a practical matter," id., create legal confusion which could undermine or serve as an impediment to their respective easement rights.

Next, under the second 19(b) factor, the plaintiffs have offered no means or proposal as to how any prejudice to the absent parties can be lessened. Nor can the court conceive of any means to reduce the prejudice ensuing from a declaration

that the proposed use of the easement is invalid, while neither the owner nor prospective user of the easement are before the court.

As to the third factor, for the same reasons set forth above in its discussion of complete relief under Fed. R. Civ. P. 19(a)(1)(A), the court also finds that any judgment entered in this case would not be "adequate" because it would not fully resolve the issue against all parties with an interest in the easement.  Fed. R Civ. P. 19(b)(3).

Finally, as to the fourth factor, plaintiffs do not dispute that if this case is dismissed it could be filed in state court with all required parties present.  Instead, they assert that they avoided state court to be "free from the influences of New Hampshire politics and Eversource money."[22]  The court finds that this sort of veiled and unsubstantiated criticism of New Hampshire's state courts has little evidentiary value and adds nothing to the court's analysis.  At oral argument, plaintiffs tried to support their position by referring to Mullen v. Pub. Serv. Co. Of New Hampshire, No. 2014-0797, 2015 WL 11071989 (July 16, 2015), a case, like this one, involving landowners contesting PSNH's and NPT's alleged misuse of an easement in connection with the Northern Pass project.  The Court affirmed

---

[22] Pltff. Obj., doc. no. 11, at 2.

the trial court's grant of the defendants' motion to dismiss for failure to state a claim upon which relief may be granted.  Id. at *4.  At oral argument, plaintiff's counsel characterized the dismissal of the Mullen case without discovery as depriving those plaintiffs of "their day in court," and that he filed suit in federal court (although not against PSNH and NPT) to "assure [plaintiffs of] a fair shot."  Plaintiffs, however, have cited no authority to support their implicit assertion that a court's granting a motion to dismiss a complaint for failure to state a claim -- a procedural posture that almost by definition precedes discovery -- is in any way indicative of a court incapable of, or indisposed to, giving their case proper consideration.  Thus, all of the Rule 19(b) factors militate in favor of dismissal for non-joinder.

Plaintiffs' objection does not directly address the Rule 19(b) factors set forth above.  It is instead grounded in the contention that EESC controls NPT, PSNH, and "every aspect of the Northern Pass project,"[23] such that EESC can represent the interests of the easement owner and lessee.[24]  This argument does not withstand scrutiny when examined in light of the undisputed record.  EESC is not a parent of NPT or PSNH.  Nor is EESC the

---

[23] Pltff. Obj., doc. no. 11 at 3.

[24] Id. at 7.

owner of the easement, a party to the lease referred to in the Complaint, or the proponent of record of the Northern Pass project.[25]

As noted previously, supra, § I, EESC provides non-power services to other wholly-owned subsidiaries of Eversource Energy. All of EESC's services are rendered pursuant to the terms of, and limited by the scope of, contractual agreements.[26] As such, EESC does not direct or control any of the affiliates for which it provides services.[27] Thus, contrary to the premise of plaintiffs' objection, the undisputed facts show that EESC is not "responsible for all aspects of the [Eversource Energy] transmission system including operations, maintenance, engineering, planning, reliability compliance, project management and construction."[28] EESC is not a public utility, and as such it cannot own any plant or equipment used in the generation, transmission or sale of electricity.[29] The upshot of the above corporate structure is that EESC's presence in this

---

[25] Bersak Affidavit, doc. 9-2 ¶ 14; Complaint, doc. no. 1 ¶¶ 6 – 19.

[26] Id. at ¶ 7.

[27] Id. at ¶ 9.

[28] Id. at ¶ 12.

[29] Id. at ¶¶ 10 & 11.

litigation does not overcome the absence of PSNH and NPT in the context of the court's Rule 19 analysis.[30]

While not disputing the above corporate structure, plaintiffs argue that EESC can represent the interests of PSNH and NPT because various EESC executives and attorneys also serve in similar capacities with PSNH and NPT, and that EESC employees, executives or attorneys signed or submitted regulatory filings made on behalf of NPT that were related to the Northern Pass.[31]  But "'the fact that one person controls two corporations is not sufficient to make the two corporations . . . the same person under the law.'"  Michnovez v. Blair, LLC, 795 F. Supp. 2d 177, 186 (D.N.H. 2011) (quoting Vill. Press, Inc. v. Stephen Edward Co., 120 N.H. 469, 471 (1980)).

Moreover, while EESC does not dispute that it likely has a commonality of interests with NPT and PSNH insofar as seeing the

---

[30] Defendant argues that plaintiff is improperly trying to "pierce the corporate veil."  Def. Mem. of Law, doc. no. 9-1, at 9.  The plaintiffs do not make that argument in their objection, and the court does not interpret the plaintiffs' argument in that light.  Indeed, such "piercing" usually seeks to ignore corporate formalities and hold an individual liable for corporate acts.  See, e.g., LaMontagne Builders, Inc. v. Bowman Brook Purchase Group, 150 N.H. 270, 275 (noting that piercing the corporate veil results in assessing individual liability).  Here, by contrast, plaintiffs seek to put the Eversource Energy subsidiary in the shoes of two other subsidiaries, NPT and PSNH.

[31] Id. at 6-9; Complaint, doc no. 1, at ¶¶ 4-20.

Northern Pass project proceed, plaintiffs have provided no limiting principle for the proposition that such aligned interests, standing alone, can satisfy Rule 19 by simply allowing a plaintiff to sue any diverse subsidiary entity that shares a parent with a non-diverse, required, subsidiary.

Although plaintiffs point to two cases from the First Circuit Court of Appeals in support of their objection, both are inapposite. In Bacardi Int'l Ltd. v. V. Suarez & Co., Inc., 719 F.3d 1 (1st Cir. 2013), the Court held that a plaintiff petitioning for confirmation of an arbitration award could protect the interests of an absent affiliated company, in part because the two entities "would each wish to show the same thing," i.e., that the arbitration award should not be vacated. Id. at 11 (citing Pujol, 877 F.2d at 135). Although Bacardi was addressing Rule 19(a), rather than 19(b), as here, it is instructive, but it does not support plaintiffs' position. In the first instance, the procedural posture of Bacardi was a significant factor. The Court of Appeals noted that it was not addressing a "question of whether [the absent party] would have been a required party if the contract dispute had been adjudicated in the district court" rather than in the context of the "limited nature of judicial review" of an arbitration award. Id. at 9. Here, the court views the current dispute as more akin to the underlying contract dispute referred to -- but not

before the court -- in Bacardi, rather than the more limited arbitral confirmation proceeding that was actually being litigated in that case.  Equally as important, the plaintiff in Bacardi, was trying to confirm an arbitration award over which it clearly had an interest; it had successfully participated in the arbitration.  Here, EESC has no legal interest in the lease or easement burdening plaintiffs' property.  Instead, only the legal interests of NPT and PSNH at stake.

The Bacardi court relied on Pujol, supra, in which the Court of Appeals held that a defendant parent company could adequately protect the interests of its (absent and non-diverse) wholly-owned subsidiary, which, the court noted, the parties agreed was a "corporate shell." 877 F.2d at 135.  Here, EESC is not a parent company of NPT or PSNH.  Nor is it a corporate shell, existing separately from the absent companies "only on paper." Id.  The undisputed facts demonstrate that EESC is a separately incorporated entity which maintains its own books and accounts, separate and apart from other Eversource Energy subsidiaries, including PSNH and NPT.[32]

Ultimately, the corporate relationship between and among the three businesses is insufficient to overcome EESC's well-founded argument that PSNH and NPT are required, indispensable

---

[32] Bersak Affidavit, doc. 9-2 ¶ 15.

parties, and that "in equity and good conscience, the action [can not] proceed among the existing parties" and must be dismissed.  Fed. R. Civ. P. 19(b).[33]

### III. **Conclusion**

Plaintiffs' motion to amend[34] is GRANTED.  Defendant's motion to dismiss[35] is GRANTED.  The clerk shall enter judgment accordingly and close the case.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  September 28, 2017

cc:  Arthur B. Cunningham, Esq.
     Bruce W. Felmly, Esq.
     Adam M. Hamel, Esq.

_____

[33] At oral argument, plaintiff's counsel argued that Hooper v. Wolfe, 396 F.3d 744 (6th Cir. 2005), supported a finding that NPT and PSNH are not indispensable under Rule 19(b).  The court disagrees.  In Hooper, the court held that a limited partnership is not an indispensable party in a dispute between its two partners.  Id. at 748-49.  The court, relying on the decisions of other courts of appeals, relied on "the commonsense notion that so long as the constituent partners are before the court, the partnership is not an indispensable party."  Id. at 749.  Here, where EESC has no legal connection to the easement at issue -- or its proposed use -- the absence of the two parties that do have such connections warrants the opposite conclusion.

[34] Doc. no. 21.

[35] Doc. no. 9.